IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DANIEL R. LONERGAN,

    Plaintiff,

vs.                                    Case No. 4:14cv42-MW/CAS

MICHAEL D. CREWS,
and PAMELA JO BONDI,

    Defendants.

_____/

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding pro se and in forma pauperis, has filed a motion seeking leave to exceed the page limitation imposed by a prior order, doc. 14, and a proposed amended civil rights complaint, doc. 13. Plaintiff's motion to exceed the page limit, doc. 14, by five additional pages is granted. Plaintiff's amended complaint may now be reviewed pursuant to 28 U.S.C. § 1915A.

Plaintiff is incarcerated at Desoto Correctional Institution in Arcadia, Florida, and brings this civil rights action against the Secretary of the Florida Department of Corrections and the Florida Attorney General. Doc. 13. Plaintiff's claims are that Defendants failed to reasonably accommodate his cancerous skin condition, refused to provide a "medical diagnosis for disability determination," and Plaintiff claims that "policy

statements violation due process" . . . . Doc. 13 at 3-4. Plaintiff seeks declaratory judgment and injunctive relief. *Id.* at 19-20.

The facts of this case are that in 2010, Plaintiff was examined by a dermatologist and twice received cryosurgery to remove suspect skin cancers apparently on his upper left arm and upper right shoulder. *Id.* at 4. Plaintiff contends no biopsy was performed and he was diagnosed with "acitinic keratosis, a type of pre-cancer." *Id.* Plaintiff was advised to stay out of the sun, and the dermatologist directed Plaintiff be "provided a large hat, sun block and a *no sun pass*." *Id.* Plaintiff contends that prison security does "not permit a 'no sun' pass" and his request to "transfer for a self contained facility to avoid sun exposure" was denied. *Id.* at 5. It appears, however, that Plaintiff was given a pass for the hat and a pass that would limit him to no more than fifteen minutes per hour of sun exposure. *Id.* at 5, 6.

Plaintiff was, however, transferred in April 2011 to Desoto Correctional Institution (DSI) and "noticed that the same cancerous areas twice removed [were] beginning to return and several larger spots appeared on his right arm." *Id.* Plaintiff alleges that he submitted a "Request for Reasonable Accommodation" to M. Taylor, the ADA Coordinator for the Department of Corrections. *Id.* Plaintiff does not explain what he requested, but states that his request was denied.[1] *Id.* Plaintiff appealed the denial and claims that all persons involved in denying his requests are not medically qualified to "reasonably accommodate Plaintiff." *Id.*

---

[1] At another point in the amended complaint, Plaintiff suggests that his request for "reasonable accommodation" was a transfer. Doc. 13 at 6.

Plaintiff then alleges that at some point, apparently through the grievance procedures, he sought a "medical evaluation" which "met with no success." *Id.* at 5. Plaintiff went to sick call where the cancerous areas were noted. *Id.* at 6. Plaintiff alleges that he was not given an evaluation "for the *impairment,*" yet it is clear that Plaintiff was seen by medical staff and his skin issues were evaluated. *Id.* Plaintiff states that he initiated grievance procedures concerning the failure to evaluate his impairment, which appear to have been denied finding that Plaintiff's medical condition was not a disability for ADA purposes and he was given appropriate medical care. Plaintiff was directed to go to sick call if he had other medical problems. *Id.*

Plaintiff's amended complaint details various medical examinations and treatment for the alleged cancerous lesions. Doc. 13. Plaintiff contends he must stand in line in the sun "for every movement" to the mess hall, canteen, chapel, and the like. *Id.* at 7. Plaintiff acknowledges, however, that he has a pass for a hat, sun block, and long sleeve shirts although he points out that they are "without UV protection." *Id.* at 6, 9. However, he contends that he foregoes many services offered when "he knows the lines will be long." *Id.* at 7. Plaintiff contends that "[t]he physical composition of DSI is not compatible with [his] impairment." *Id.*

Based on those underlying facts, Plaintiff contends that he has a disability under the Americans with Disabilities Act (ADA) and he seeks to bring seven separate claims in this case. The first claim is that "Defendant's agents refuse to determine" that Plaintiff has a "disability for ADA determination . . . ." Doc. 13 at 8. Plaintiff disputes the findings of persons employed by the Department of Corrections who have determined that Plaintiff's "medical classification does not indicate" that Plaintiff is "disabled" for

purposes of the ADA. *Id.* at 9. Plaintiff contends that his "cancerous skin condition is a disability."[2] *Id.* He claims he is being discriminated against because the Department will not provide him with reasonable accommodations. *Id.* Plaintiff states that he "often foregoes recreational activities, associating on the recreation yard, and services offered such as chapel and various meals, at which he knows the lines will be long." *Id.* at 10. Plaintiff claims that his access "can be accomplished by the reasonable accommodation of transferring [Plaintiff] to a self-contained facility," meaning a facility "such as South Bay Correctional facility [that] has inter joining corridors covered by aluminum, preventing sun exposure." *Id.* at 10; *see also* page 5, n.1.

Plaintiff's claim in count one fails for several reasons. First, there are no factual allegations in the amended complaint which reveal any actions by either of the two named Defendants, Secretary Crews or Attorney General Bondi. Rather, the allegations concern actions by "Defendant's agents." That is not sufficient. In civil rights actions, it is not permissible to name a prison official as a Defendant merely because he or she has supervisory authority over others. Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). The doctrine of respondeat superior or vicarious liability does not provide a basis for recovery under § l983. Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992), *citing* Monell v. Dep't of Soc. Srvcs, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *see also* Collins v. City of Harker Heights, 503 U.S. 115, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992); Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). Thus Defendant Crews is not liable for the

---

[2] Plaintiff asserts that he is "substantially limited" in the life activity of walking. Doc. 13 at 10.

Case No. 4:14cv42-MW/CAS

actions of "agents" or persons who are employed by the Department of Corrections and are unwilling to label Plaintiff as "disabled."  Moreover, Defendant Bondi has no involvement with the Department of Corrections and persons employed there are not her agents.  Because neither Defendant was personally involved in any of the events alleged, and because neither Defendant enacted a policy which is at issue, claim one of the amended complaint must be dismissed.

In addition, Plaintiff's factual allegations do not demonstrate that he is disabled for purposes of the ADA.  "To qualify as disabled under subsection (A) of the ADA's definition of disability, a claimant must initially prove that he or she has a physical or mental impairment."  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 194, 122 S.Ct. 681, 690 (2002),[3] citing 42 U.S.C. § 12102(2)(A).  The Supreme Court has stated that "[m]erely having an impairment does not make one disabled for purposes of the ADA."  Toyota Motor Mfg., 534 U.S. at 195, 122 S.Ct. at 690.  "Claimants also need to demonstrate that the impairment limits a major life activity," and "further show that the limitation on the major life activity is 'substantia[l].' "  Id., citing 42 U.S.C. § 12102(2)(A).  Plaintiff does not provide sufficient allegations to support an ADA claim because he

---

[3] Congress expressly overruled Toyota by the ADA Amendments Act of 2008, 122 Stat. 3553, Pub.L. No. 110-335, which overturned the Court's strict standards for determining disabilities.  See Wingfield v. South Univ. of Florida, Inc., No. 8:09cv01090, 2010 WL 2465189, at *5, n.30 (M.D. Fla. June 15, 2010).  Notwithstanding, it remains true that the existence of an impairment or health problem does not necessarily also render one "disabled" for purposes of the ADA.  See McNiff v. Town of Cracut, 433 F.Supp.2d 145, 155 (D. Mass. 2006) (holding that "the plaintiff's claim of cancer itself is not enough to fulfill the ADA requirement of there being a substantial limitation on major life activity.").  As noted by the Fourth Circuit, "[t]he ADA simply was not designed to protect the public from all adverse effects of ill-health and misfortune. Rather, the ADA was designed to assure that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps."  Halperin v. Abacus Tech. Corp., 128 F.3d 191, 200 (4th Cir. 1997).

does not demonstrate that he is substantially limited in a major life function.[4]  Pursuant to § 12102(1)(A) of the ADA, a physical impairment is one that "substantially limits" a major life activity which "includes, but is not limited to 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.' " Henderson v. Thomas, 891 F.Supp.2d 1296, 1306 (M.D. Ala. 2012), *quoting* 42 U.S.C. § 12102(2)(A).  Moreover, Plaintiff would have to show "that he has been 'excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity.' " Hodge v. Secretary, Fla. Dep't of Corr., 464 F.App'x 810, 813 (11th Cir. 2012), *citing* 42 U.S.C. § 12132.

Here, Plaintiff contends he is limited in walking and standing, but it is only because he qualifies such limitations with "walking outside" and similarly, "standing in lines outside."  *See* doc. 13 at 10.  Because Plaintiff does not allege that he is limited in walking or standing, he cannot pursue an ADA claim.

Count two of the amended complaint asserts that persons in the Department of Corrections refuse to examine him and acknowledge that he has an impairment.  Doc.

---

[4] "Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " 42 U.S.C. § 12132 (2000 ed.), *quoted in* United States v. Georgia, 546 U.S. 151, 153, 126 S.Ct. 877, 878-79 (2006).  Title II of the ADA applies to inmates in state prisons.  Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998); Ganstine v. Sec., Fla. Dep't of Corr., 502 F.App'x 905, 909 (11th Cir. 2012); Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1081 (11th Cir. 2007) (noting that "a disabled prisoner can state a Title II-ADA claim if he is denied participation in an activity provided in state prison by reason of his disability.").  Furthermore, Title II validly abrogates a state's sovereign immunity.  Georgia, 546 U.S. 151, 126 S.Ct. 877 (2006).

13 at 11. Plaintiff contends that Defendants may not fail to provide him a medical diagnosis and he claims that his due process and equal protection rights are violated by Defendants noncompliance with "ADA protocol," 42 U.S.C. § 12101, *et seq.*, to make the determination that he has an impairment. *Id.* Plaintiff alleges that Dr. Cabrero refuses to acknowledge that Plaintiff has an impairment so as to circumvent application of *Id.* at 21-22. Plaintiff contends that the failure to examine him also violates the Due Process Clause, the Equal Protection Clause, *id.* at 22, and constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 23-25.

> [A] lawsuit under the ADA or the Rehabilitation Act may not be based on medical treatment decisions. *Burger v. Bloomberg*, 418 F.3d 882, 882 (8th Cir. 2005) (per curiam ); *see also Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005)("purely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act") & *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" and that the statute "does not create a remedy for medical malpractice"). Simply put, the Rehabilitation Act and the ADA were never intended to apply to professional decisions involving medical treatment. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005).

<u>Lucas v. Georgia Corr. Health Care</u>, No. CV 104-081, 2006 WL 839359 at *11 (S.D. Ga. Feb. 3, 2006). Plaintiff does not state a viable claim by alleging that treating medical professionals violate the ADA when they fail to assess him as "impaired." Such an assessment is a medical decision and may not proceed as an ADA claim. <u>Schiavo</u>, 403 F.3d at 1294 (stating "[t]he Rehabilitation Act, like the ADA, was never intended to apply to decisions involving the termination of life support or medical treatment."). Count two must be dismissed.

Plaintiff's third claim is essentially a restatement of claim two. Doc. 13 at 11. Plaintiff contends that the failure or refusal to give him a medical diagnosis of disability

as a violation of due process and equal protection.  *Id.*  A right to medical care is premised on the guarantees of the Eighth Amendment.  Plaintiff does not allege a substantive claim for due process nor does Plaintiff allege that other persons with skin cancer have been treated differently.  Plaintiff's allegations reveal that he receives medical care, that he is "evaluated every 30 days," *Id.* at 7, and he is not denied due process simply because medical personnel will not agree with Plaintiff that he is disabled.  *Id.* at 12.  Plaintiff does not have a "vested interest" or right to a specific medical diagnosis; rather, he has a right to appropriate medical care.  Plaintiff's facts do not reveal that he has not been medically evaluated, only that the evaluation does not conclude with Plaintiff's desired outcome: a finding of "disabled."  *Id.* at 12.  This claim is insufficient on its face and for the reasons stated above with respect to claim two.

     Plaintiff's fourth claim is that the refusal to give him a medical diagnosis violates his Eighth Amendment rights.  *Id.* at 12-13.  The claim is a restatement of claim three and is insufficient.  Plaintiff has been provided medical care and treatment, and his allegations acknowledge that Plaintiff received a pass to limit his sun exposure, a hat, and long sleeves.  *Id.* at 13.  Indeed, if Plaintiff were not incarcerated, after providing medical treatment to remove any lesions, the recommendation would be given to limit time in the sun, wear a hat and long sleeves.  Plaintiff's medical care is not unconstitutional.  Moreover, as noted above, neither Defendant Bondi nor Crews provides medical care to prisoners and cannot be held responsible for the actions or inactions of others.  The fourth claim must also be dismissed for failure to state a claim.

     Plaintiff's fifth claim alleges that FLA. ADMIN. CODE R. 33-210.201 is unconstitutional because it "impedes effective and just operation of Title II of the ADA . .

. ."  *Id.* at 14.  Plaintiff contends that the Rule "lacks established criteria" and fails to give guidance to Defendant's agents.  *Id.*  Plaintiff claims "[t]he lack of such guidance has resulted in free rein by Defendant's agents" without any recourse absent judicial intervention.  *Id.*  Plaintiff states that under the Rule, medical personnel are to examine an inmate to determine if an impairment exists, which should then be analyzed pursuant to three factors.  *Id.*  Once again, Plaintiff's claim is a restatement of the earlier claims and for the reasons stated above, it is insufficient to state a claim.

To the degree Plaintiff also contends that the "positions of ADA Coordinator and Impaired Inmate Services Coordinator are without promulgated rule" and their decisions "constitute administrative agency rules," *Id.* at 17, that claim must fail.  It is well established that § 1983 "does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right."  Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002), *quoted in* March v. Dep't of Children and Families, No. 2:03cv162, 2006 WL 2644917 (M.D. Fla. Sept. 14, 2006).  It is also well settled that a violation of state law does "not give rise to a viable substantive due process claim."  Lovins v. Lee, 53 F.3d 1208, 1211 (11th Cir. 1995) (citing Collins v. City of Harker Heights, Texas, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)); *see also* Dean v. Escambia Cnty., No. 3:05cv29/LAC/MD, 2005 WL 927387 (N.D. Fla. Apr. 20, 2005) (holding that "[a]n alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution.").  McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994).  Thus, even assuming the Plaintiff's contention is correct, that the

Department of Corrections has positions that are without promulgated rules, it is not a violation of the federal Due Process Clause.

As a sixth claim, Plaintiff challenges that Department of Corrections Directives #403.006 and #401.010 are invalid because they do "not provide for ADA evaluation review nor co-payment waiver." *Id.* at 18. Essentially, Plaintiff contends that his visits to sick call require a copayment and routine followup care is exempted from the copayment requirement. *Id.* Plaintiff contends that the directives are not based upon a promulgated rule and, thus, is unenforceable. *Id.* For the reasons stated above for Plaintiff's fifth claim, this claim must also be dismissed. A violation of state law is not unconstitutional. Moreover, this claim restates Plaintiff's earlier claims for an ADA evaluation which is insufficient for the reasons previously explained.

Finally, Plaintiff's seventh claim seeks to challenge the requirement that prisoners pay a $5.00 copayment for medical care. Doc. 9 at 18. Plaintiff contends that the copayment violates the ADA's prohibition against placing a surcharge on disabled individuals and is unconstitutional. *Id.* at 18-19. As Plaintiff was previously advised, *see* doc. 9, there is no "general constitutional right to free health care." Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997), *quoted in* Bingham v. Nelson, No. 5:08cv246, 2009 WL 2982831, at *3 (M.D. Ga. Sept. 11, 2009); *see also* City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 245 n.7, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (noting that although a hospital and governmental entity may be required "to provide care to indigents," it does not meaning that a hospital or government entity does not have the right "to recover from a detainee the cost of medical services provided to him."). Plaintiff does not allege that he is unable to receive medical care and the

imposition of a small fee or lien against an inmate bank account is not unconstitutional. Ellis v. Hart, No. 7:07cv11, 2008 WL 131171, at *4 (M.D. Ga. Jan. 10, 2008) (holding that inmate claim challenging a co-payment for medical care fails to state a claim); Oliver v. Matthews, No. 2:02cv1373, 2005 WL 1270949, at *8 (M.D. Ala. May 27, 2005) (same), citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 408 (9th Cir.1985) (imposition of fee for medical treatment provided to an inmate does not amount to a constitutional violation); Poole v. Isaacs, 703 F.3d 1024, 1027 (7th Cir. 2012) ("holding that the imposition of a modest fee for medical services, standing alone, does not violate the Constitution."). Moreover, it does not violate the ADA because the imposition of the medical co-payment is not discrimination; it is imposed on all prisoners.

Plaintiff's amended complaint does not state a viable claim. Plaintiff's challenge to the inability to receive the medical diagnosis Plaintiff desires does not violate Plaintiff's constitutional rights and does not violate the ADA. Plaintiff may not use the ADA to require the Department of Corrections to transfer him to a more desirable institution. Plaintiff admits that he has been provided such things as a hat, long sleeves, a pass that excludes him from working outside, and the like. Plaintiff's only real claim for relief is to be given the "reasonable accommodation" of a transfer.

In the Lucas case, *supra*, the court considered an inmate's claim that "because at various times he has been without a wheelchair, knee braces, or a short walk profile," the defendants discriminated against him "by subjecting him to long walking distances which serve to deny him participation in or the benefits of programs, services, or activities at ASMP." Lucas, 2006 WL 839359, at *10, *citing* Lincoln Cercpac v. Health

and Hosps. Corp., 920 F.Supp. 488, 498 (S.D.N.Y. 1996) (stating "plaintiffs here have not defined a service available to the non-disabled that they are being denied by reason of their disability.  Accordingly, we find plaintiffs have no substantial likelihood of success on their ADA claims."); Casey v. Lewis, 834 F.Supp. 1569, 1585 (D. Ariz. 1993) (plaintiffs failed to establish Rehabilitation Act claim in part because they "did not identify particular programs from which any of the handicapped inmates were excluded because of their handicaps").  As is the case here, the plaintiff claimed "that Defendants had discriminated against him by failing to provide him with medical care and by not transferring him to Johnson State Prison, a facility where walking distances are purportedly shorter than at ASMP. . . ." Lucas, 2006 WL 839359, at *11.  The court held that "a lawsuit under the ADA or the Rehabilitation Act may not be based on medical treatment decisions."  Id., citing Burger v. Bloomberg, 418 F.3d 882, 882 (8th Cir. 2005)( per curiam); see also Fitzgerald v. Corrections Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005)("purely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" and that the statute "does not create a remedy for medical malpractice").  Moreover, the court "note[d] that the ADA and the Rehabilitation Act do not give inmates a 'right of transfer.'"  Lucas, 2006 WL 839359, at *11, citing Miller v. King, 384 F.3d 1248, 1266, n.21 (11th Cir. 2004), opinion vacated and superseded by Miller v. King, 449 F.3d 1149 (11th Cir. 2006), pursuant to United States v. Georgia, 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006)(holding that Title II of the ADA abrogates a state's sovereign immunity).  "A transfer to another

prison is only required when the State elects to comply with the ADA or the Rehabilitation Act by bringing some, but not all, of its facilities into compliance with the law." Lucas, 2006 WL 839359, at *11 (citing to Miller, *id.* at 1266). Plaintiff's amended complaint does not state a viable claim for relief and Plaintiff is not entitled to demand a transfer to a "self-contained" prison facility. Therefore, this case should be dismissed.

Accordingly, it is **ORDERED** that Plaintiff's motion to exceed the page limitation, doc. 14, is **GRANTED**.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's amended complaint, doc. 13, be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on May 15, 2014.

     S/ Charles A. Stampelos
     **CHARLES A. STAMPELOS**
     **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**